**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| MAX WANG | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:17-cv-00158-ALM |
| | § | JURY DEMANDED |
| | § | |
| SAFECO INSURANCE COMPANY | § | |
| OF INDIANA and SEAN F. SMITH | § | |
| Defendants | § | |

---

### PLAINTIFF MAX WANG'S FIRST AMENDED COMPLAINT

---

Plaintiff, MAX WANG, files this, his First Amended Complaint against Defendants, SAFECO INSURANCE COMPANY OF INDIANA ("SafeCo") and SEAN F. SMITH ("Smith"), and for cause of action would respectfully show as follows:

### PARTIES AND SERVICE

1.    Plaintiff, MAX WANG, is an individual residing in the City of Plano, Collin County, Texas.

2.    Defendant SAFECO INSURANCE COMPANY OF INDIANA, is an insurance company engaging in the business of insurance in the State of Texas and has already made an appearance and no further service is required.

3.    Defendant SEAN F. SMITH, is an insurance adjuster engaging in the business of insurance in the State of Texas and may be served with process by certified mail at the following address: 1600 N. Collins Blvd., Suite 3000, Richardson, TX 75080.

### JURISDICTION AND VENUE

4.    This court has jurisdiction over Defendant SafeCo because it is an insurance company organized under the laws of the State of Massachusetts but operates systematically and

continuously in the State of Texas, has purposefully availed itself of Texas' law, and the Court's

exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

5.      This court has jurisdiction over Defendant Smith because he is an individual domiciled in the

State of Texas.

6.      Venue in Collin County, Texas is proper in this action because the insured property is situated

in Collin County, Texas.

## FACTS

7.      This civil action involves the wrongful denial of covered homeowner's insurance benefits and

a breach of SafeCo's duty of good-faith and fair dealing and numerous violations of the Texas

Insurance Code.

8.      Plaintiff is the named insured in SafeCo insurance policy No. OY06815000, hereinafter

referred to as "the Policy."

9.      On or about April 11, 2016, numerous severe hailstorms tore through the City of Plano leaving

several homes with broken windows and tarps over their roofs in its wake.  Plaintiff's home

was in the path of the storm.

10.     Thereafter, Plaintiff submitted a claim to SafeCo for windstorm and hail damage, which are

specifically covered perils in the Policy.  SafeCo assigned an adjuster to investigate and pay

Plaintiff's claim.

11.     Unfortunately, SafeCo and its agents closed the claim absent conducting a reasonable

investigation into all the damages to the property which constitutes an unfair settlement

practice with respect to an insurance claim.

12.     A first-party property claims adjuster is really the only advocate that the homeowner has after

a loss. The property claims adjuster is employed by the insurance company to investigate and

pay claims to the homeowner.  This arrangement creates and inherent conflict of interest

because the property claims adjuster owes fidelity to the homeowner to objectively investigate

and pay claims, but this same adjuster is paid by an insurance company that seeks to maximize profits by minimizing losses.  The adjuster is paid by the insurance company, but it's still his duty to ensure that he objectively analyzes all of the damage that could have occurred during the storm.  If not him then who, right?

13.   It's critically important for the claims adjuster to read the insurance policy, know the coverages, be a great investigator and communicator, take his time, pay attention to detail, and know how to estimate the costs of any repairs.  Those are critical elements in any first-party property claims investigation.

14.   Here, the adjusters assigned to Plaintiff's claim were placed in a position to help Plaintiff in a time of distress after a devastating storm and it was critically important that they take enough time to properly do their jobs and analyze all the damage to Plaintiff's property.  Instead, the adjusters handled the claim in a manner calculated to construct a pretextual basis for denial or underpayment of Plaintiff's claim.  For example, Defendant Smith denied Plaintiff's claim for general contractors' overhead and profit even though he knew that Plaintiff hired a general contractor to initiate the repairs.

15.   In Texas insurance companies can't deduct, or withhold, general contractor overhead and profit and sales tax from an actual cash value payment.  *Ghoman v. New Hampshire Ins. Co.*, 159 F.Supp.2d 928, 934 (N.D. Tex. 2001).  *See also* Texas Dep't of Insurance, Commissioner's Bulletin No. B-0045-98 (June 12, 1998) ("[d]eduction of prospective contractors' overhead and profit and sales tax in determining the actual cash value under a replacement cost policy is improper, is not a reasonable interpretation of the policy language, and is unfair to insureds.").

16.   The total cost of repairs to Plaintiff's property is $35,073.81 yet Defendant Safeco has only paid $21,536.16 towards that amount.  Plaintiff is owed the full amount of the claim

unreasonably withheld, plus 18% penalty interest thereon, together with reasonable attorney's fees incurred in bringing this action.[1]

17.   After numerous requests for a written explanation as to why his claim was underpaid, Plaintiff was told by Defendant Smith or his accomplices that Plaintiff's policy does not cover general contractor overhead and profit.  That statement was far less than the truth.

18.   Defendant Smith or his accomplices misrepresented the terms or the benefits or advantages promised by the Policy in violation of §541.051(1)(A) and (B) of the Texas Insurance Code. SafeCo breached the terms of the insurance policy by withholding general contractor overhead and profit and then lying about it.

19.   What's more, Plaintiff's gutters were damaged by the storm, however SafeCo denied Plaintiff's claim to repair or paint them to match the pre-loss condition of the gutters. After being made aware of the issue regarding the gutters, Defendants refused to reverse the denial and Plaintiff's claim was underpaid.

20.   SafeCo failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim after SafeCo's liability became reasonably clear.  The gutters were painted before the storm.  This is textbook bad-faith claims handling and Plaintiff's claim was underpaid.  A reasonable objective investigation would have revealed the extensive damage and Plaintiff would have been fully compensated under the terms of the Policy.

21.   Together, Defendants set about to deny or underpay a properly covered loss to Plaintiff's detriment.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

22.   Plaintiff incorporates herein by reference paragraphs 1 through 21.

---

[1] TEX. INS. CODE §542.060.

23.     Under the terms of Plaintiff's homeowners insurance policy, SafeCo Insurance Company agreed to pay the cost to repair, rebuild or replace Plaintiff's property in the event it was damaged by hail or windstorm in exchange for Plaintiff paying his premium.

24.     If Plaintiff never repairs or replaces the damaged or destroyed property, payment will be on an actual cash value basis.  This means replacement cost less applicable depreciation.

25.     After Plaintiff makes a replacement cost claim, the policy requires SafeCo Insurance Company to pay replacement cost in excess of the actual cash value only after Plaintiff repairs or replaces the damaged property.  This amount is determined by the actual cost to repair, rebuild or replace the covered property.

26.     So when Plaintiff paid $29,639.70 to replace his roof, SafeCo was required to pay him the difference between the actual cash value payment and the cost to actually replace the roof.  SafeCo has admittedly only paid $21,536.16 towards any repairs in breach of the indemnity contract.

27.     Indemnity is the foundation of an insurance policy.  The objective is that the insured should neither reap economic gain nor incur a loss if adequately insured. This objective requires that the insured receive a payment equal to that of the covered loss so that the insured will be restored to the same position after the loss as before the loss.

28.     The calculation of actual cash value will result in an under-payment if the insurer fails to include all damaged property or deducts prospective contractors' overhead and profit and sales tax in determining the actual cash value in a replacement cost policy.  Generally, the objectives of indemnity will be met if actual cash value is calculated as replacement cost with proper deduction for depreciation.

29.     There is no situation in which the deduction from replacement cost of general contractors' overhead and profit and/or sales tax on materials will be the correct measure of actual cash value.  Under a replacement cost policy, the liability limits of the policy and the premium paid

by Plaintiff are determined on the basis of the replacement cost of the structure. The value of contractor´s overhead and profit, as well as sales tax on building materials, has been included in the limit of liability for which Plaintiff paid for in exchange for insurance coverage.

30.     When SafeCo, in determining actual cash value, excluded costs that are included in the determination of liability limits, on which Plaintiff's premium was based, SafeCo reaped an illegal windfall because it received premium on insurable values for which loss was never be paid.  Defendants breached the terms of the Policy.

31.     Plaintiff submitted a valid claim for hailstorm and windstorm damage within the policy period and SafeCo Insurance Company breached the contract by denying or underpaying the claim absent a reasonable investigation and failing to indemnify Plaintiff for the cost he paid to repair or replace the damaged property.

32.     As a result of Defendants' breach of the insurance contract, Plaintiff has incurred damages within the jurisdictional limits of this Court and will continue to incur damages until the entire claim is paid, including general contractors' overhead and profit.

## SECOND CAUSE OF ACTION
## UNFAIR OR DECEPTIVE ACTS OR TRADE PRATICES

33.     Plaintiff incorporates herein by reference paragraphs 1 through 32.

34.     Defendants misrepresented to Plaintiff the extent of damage to his property and the rights and benefits contained in the policy at issue.  For example, Plaintiff was told by Defendant Smith or his accomplices that Plaintiff's policy does not cover expenses related to general contractor overhead and profit.  This was a misrepresentation of a material fact or policy provision relating to coverage in violation of the Texas Insurance Code.[2]

35.     Further, SafeCo failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim with respect to which SafeCo's liability has become reasonably

---

[2] TEX. INS. CODE §541.060(a)(1)

clear by undervaluing the cost to repair the undisputed damaged property.[3]   For example, Plaintiff's gutters were damaged by the storm, however SafeCo denied Plaintiff's claim to repair or paint them to match the pre-loss condition. After being made aware of the issue regarding the gutters, Defendants refused to reverse the denial and Plaintiff's claim was underpaid.

36.     Ultimately, SafeCo did not settle the claim for adequate funds to even begin repairs of the fence and is essentially a complete denial of Plaintiff's claim.



37.     Plaintiff's fence must be replaced due the severity of the hail damage depicted above.  It could not just be "cleaned" as SafeCo suggested.

38.     Further, Defendant SafeCo failed to promptly provide to Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for SafeCo's denial of the general contractor overhead and profit claim.[4]   Defendants advertised to Plaintiff certain items would be covered in the event of a claim then denied the claim without a valid explanation.

---

[3] TEX. INS. CODE §541.060(a)(2)(A)
[4] TEX. INS. CODE §541.060(a)(3)

39.     Finally, SafeCo refused to pay Plaintiff's claim without conducting a reasonable investigation with respect to the claim.[5]   SafeCo did not inspect Plaintiff's roof thoroughly and missed damage to several metal roof  accessories, skylights, gutters, and downspouts.   Even after Plaintiff pointed out the oversight SafeCo denied the claim without conducting any investigation.   This is textbook bad-faith claims handling and Plaintiff's claim was underpaid.

40.     As a result of aforementioned conduct, Plaintiff has incurred damages within the jurisdictional limits of this Court.

### THIRD CAUSE OF ACTION
### BREACH OF COMMON LAW DUTY OF GOOD FAITH AND FAIR DEALING

41.     Plaintiff incorporates herein by reference paragraphs 1 through 40.

42.     Under Texas law accompanying every insurance contract is a common law duty to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a *tort* as well as a breach of contract. This duty of good faith and fair dealing arises out of the special trust relationship between the insured and the insurer.   The duty of good faith and fair dealing is thus imposed on the insurer because of the disparity of bargaining power and the exclusive control that the insurer exercises over the processing of claims.

43.     A breach of the duty of good faith and fair dealing is established when: (1) there is an absence of a reasonable basis for denying or delaying payment of benefits under the policy and (2) the carrier knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim.

44.     The first element of this test requires an objective determination of whether a reasonable insurer under similar circumstances would have delayed or denied the claimant's benefits. The second element balances the right of an insurer to reject an invalid claim and the duty of the

---

[5] TEX. INS. CODE §541.060(a)(7)

carrier to investigate and pay compensable claims. This element will be met by establishing that the carrier actually knew there was no reasonable basis to deny the claim or delay payment, or by establishing that the carrier, based on its duty to investigate, should have known that there was no reasonable basis for denial or delay.

45.     Here, there was no reasonable basis for denying full payment for replacement of the entire roof plus overhead and profit.  Plaintiff's roof was replaced for $29,639.70 which is not an unreasonable price for such services in Collin County, Texas, yet Plaintiff has been paid far less than that amount.  Absent evidence that this amount is unreasonable, SafeCo knowingly breached its duty of good faith and fair dealing.  A reasonable insurer under similar circumstances would not have delayed or denied Plaintiff's claim.

46.     Based on the foregoing facts, SafeCo actually knew or should have known there was no reasonable basis to deny Plaintiff's claim or delay payment.

### FOURTH CAUSE OF ACTION
### BREACH OF THE PROMPT PAYMENT OF CLAIMS STATUTE

47.     Plaintiff incorporates herein by reference paragraphs 1 through 46.

48.     SafeCo failed to notify Plaintiff in writing of the acceptance or rejection of his claim, including the reasons for the rejection.[6]  For example, SafeCo did not provide a written explanation of the basis in the policy, in relation to the facts or applicable law, for SafeCo's denial of Plaintiff's claim for the roof repairs and failed within a reasonable time to affirm or deny coverage of Plaintiff's claim in violation of the Texas Insurance Code.

49.     Plaintiff is entitled to the entire amount to restore his home to the same position as before the loss plus 18% penalty interest per annum on the amount unreasonably withheld, together with reasonable attorney's fees.[7]  The attorney's fees shall be taxed as part of the costs in the case.

---

[6] TEX. INS. CODE §542.056
[7] TEX. INS. CODE §542.060.

## ATTORNEY'S FEES

50.     Plaintiff seeks recovery of his reasonable attorney's fees and court costs against Defendants in accordance with §38.001 *et seq.* of the Texas Civil Practice and Remedies Code, and §541 *et seq.* and §542 *et seq.* of the Texas Insurance Code.

## CONDITIONS PRECEDENT

51.     All conditions precedent to Plaintiff's right of recovery of all causes of action pleaded herein have been performed, have occurred, or been excused.

## JURY DEMAND

52.     Plaintiff hereby demands a trial by jury and has tendered the appropriate fee.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that upon trial by jury hereof, said Plaintiff recover judgment for actual damages and punitive against Defendants, including penalty interest thereon; that upon a finding that SafeCo Insurance Company or its agents acted knowingly Plaintiff be entitled to recover from Defendants additional damages in an amount of up to three times his actual damages; that Plaintiff be awarded reasonable attorney's fees and expenses incurred in obtaining judgment against Defendants and any appeals thereafter; and that Plaintiff be granted all further relief, either at law or in equity, including punitive or exemplary damages, to which she may show himself justly entitled.

Respectfully submitted,

**CLIFFORD K. NKEYASEN, PLLC**
ATTORNEYS & COUNSELORS
P.O. Box 132111
Dallas, TX 75313

Dallas: (214) 265-6535
Houston: (713) 352-0631
Fax: (214) 292-9494
NKEYASEN@OUTLOOK.COM

By:_____
        CLIFFORD K. NKEYASEN
        Texas Bar No: 24044876

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

This is to certify that on this 23rd day of March, 2017, a true and correct copy of the foregoing instrument was served on all counsel of record via e-mail and through the Court's electronic filing notice system.

By:_____
        CLIFFORD K. NKEYASEN
        Texas Bar No: 24044876