**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **MAX WANG,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 4:17-CV-** |
| | § | **000158** |
| **SAFECO INSURANCE COMPANY** | § | |
| **OF INDIANA and SEAN F. SMITH,** | § | |
| | § | |
| **Defendants.** | § | **JURY DEMANDED** |

**DEFENDANT SAFECO INSURANCE COMPANY OF INDIANA'S**
**MOTION FOR SUMMARY JUDGMENT**

Defendant Safeco Insurance Company of Indiana ("Safeco" or "Defendant") files this Motion for Summary Judgment (the "Motion") requesting that the Court dismiss each and every claim alleged against it by Plaintiff Max Wang ("Plaintiff"). The Motion is based on the pleadings and papers on file, the exhibits attached hereto, and any other evidence and/or arguments that may be offered in support of the Motion. In support of the Motion, Safeco respectfully shows the Court as follows:

**I.**

**SUMMARY OF THE ARGUMENT**

After Plaintiff's property suffered storm-related damages, Safeco paid Plaintiff more than $21,000 to repair his home. Plaintiff was not satisfied with the amount he received and, through his counsel, sent a demand for an *additional* $23,000. Shortly thereafter, and before the statutory notice period, Plaintiff filed this lawsuit (whose sole factual allegation is, essentially, that Safeco underpaid Plaintiff's claim). Thereafter, Safeco promptly demanded appraisal. Plaintiff initially refused to participate, but because

---

he signed an agreement that he would (the Policy), this Court ordered him to do so.  A mere two weeks later, the appraisers issued their award, and Safeco paid it immediately.  Given that the appraisal award conclusively determined the damages in this lawsuit, and given the additional fact that Safeco has now paid that award in full, Plaintiff cannot argue that Safeco breached the Policy.  And without any such injury, Plaintiff's extra-contractual claims *also* must fail.  Accordingly, Safeco is entitled to summary judgment on all of Plaintiff's causes of action, because Plaintiff cannot, as a matter of law, prove that he suffered any independent injury that would otherwise entitle him to damages.  Finally, and in the alternative to all of the above, Plaintiff has no evidence to support any of his causes of action now that Safeco has timely paid the Appraisal Award.

## II.

## EVIDENCE SUPPORTING MOTION

The Motion is supported by the pleadings in this cause, and the following summary judgment evidence:

**1. Exhibit A: Affidavit of Sean Smith**

- Exhibit A-1:   The policy of insurance issued to Plaintiff by Safeco, Policy No. OY07129450.

- Exhibit A-2:   August 25, 2016 estimate written by adjuster Sean Smith as a result of his inspection of the Property (defined below).

- Exhibit A-3: August 25, 2016 payment letter from Smith to Plaintiff.

- Exhibit A-4: Safeco's September 30, 2016 email to Plaintiff, issuing a supplemental payment.

- Exhibit A-5:  Safeco's revised estimate of September 30, 2016.

- Exhibit A-6: December 2, 2016 email chain between Plaintiff's roofer and Safeco regarding recovery of depreciation.

- Exhibit A-7:  December 5, 2016 email from Plaintiff's roofer to Safeco attaching invoice substantiating completion of repairs.

- Exhibit A-8: Safeco's December 6, 2016 letter to Plaintiff, issuing payment for depreciation.

**2.  Exhibit B: Affidavit of Jackson P. Mabry**

- Exhibit B-1:  Safeco's April 7, 2017 letter to Plaintiff demanding appraisal.

- Exhibit B-2:   Plaintiff's counsel's August 4, 2017 email designating Jarod Lancon as Plaintiff's appraiser.

- Exhibit B-3:   The Appraisal Award and accompanying estimate, issued on or about August 23, 2017.

- Exhibit B-4:   August 23, 2017 e-mail from Safeco's counsel to Plaintiff's counsel attaching the Appraisal Award and requesting drafting instructions and other supporting documentation for payment of same.

- Exhibit B-5:   August 24, 2017 check in payment of the Appraisal Award, and accompanying transmittal letter from Safeco's counsel.

- Exhibit B-6:   Confirmation of Plaintiff's counsel's receipt of the Appraisal Award check on August 28, 2017.

- Exhibit B-7:  Plaintiff's Rule 26 Disclosures.

**3.  Exhibit C: Affidavit of Richard Fate, Safeco's Designated Appraiser**

- Exhibit C-1:   The Appraisal Award and accompanying estimate, issued on or about August 23, 2017.

**III.**

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

**A.     THE POLICY AND PLAINTIFF'S CLAIM**

1.     Safeco issued Policy No. OY6815000 (the "Policy") to Plaintiff.[1]   The Policy was effective March 28, 2016 through March 28, 2017 and covered property located

---

[1] Affidavit of Sean Smith, at ¶ 2.

at 3421 Melanie Lane, Plano, Texas 75023-1105 (the "Property").  The Policy's deductible for wind or hail damage is $2,949.00.[2]

2.      On July 22, 2016, Plaintiff reported alleged damage to his Property that occurred "in March and April of last year [i.e., 2016]."[3]  Plaintiff's claim was assigned Claim No. 722204136038.[4]  At that time the claim was reported, Plaintiff advised Safeco that he wanted to postpone an inspection of the Property for some time and, further, directed Safeco to speak with an "Yvonne" regarding the claim, as Plaintiff was generally too busy to discuss the claim.[5]

**B.      THE INVESTIGATION AND SAFECO'S PAYMENTS**

3.      On August 16, 2016,  Safeco's adjuster Sean Smith spoke with "Yvonne" and scheduled an inspection of the Property for August 25, 2016.[6]  That inspection proceeded as scheduled, and Smith wrote an estimate that totaled $21,555.26 (RCV), which provided for a complete replacement of Plaintiff's roof and extensive repair to the home's gutters and downspouts.[7]  That same day, Smith sent Plaintiff a payment letter advising that he would receive payment for $14,860.17, which Safeco also issued that same day.[8]

4.      On September 28, 2016, Safeco received an estimate from Plaintiff's roofer, LG Renovations, who requested an additional amount of money for repairs.  On September 30, 2016, Safeco approved the supplement and revised its estimate to total $24,485.16

---

[2] *See* Ex. A at ¶ 2; *see also*, Ex. A-1.

[3] Plaintiff's Original Complaint (the "Complaint") at ¶ 12 on file with the Court.

[4] *See* **Ex. A**, at ¶ 3.

[5] **Ex. A**, at ¶ 3.

[6] **Ex. A**, at ¶ 4.

[7] **Ex. A**, at ¶ 4.

[8] **Ex. A**, at ¶ 4.

(RCV).[9]  That same day, Safeco issued a supplemental payment for $3,009.88 and sent Plaintiff a letter so advising him.[10]

5.      On December 2, 2016, LG Renovations emailed Safeco to request recoverable depreciation; Safeco responded by requesting the invoice for completed repairs.[11]  On December 5, 2016, LG Renovations emailed Safeco a copy of its final invoice for repairs, which totaled $28,773.63.[12]  On December 6, 2016, Safeco issued payment for recoverable depreciation, in the amount of $3,666.11, and, that same day, sent a letter to Plaintiff advising him of such payment.[13]  This December 6, 2016 correspondence with Plaintiff was the last activity to occur on this claim until January 9, 2017, when Plaintiff served his demand (the "Demand") to Safeco.[14]

6.      Then, on January 26, 2017, Plaintiff—having apparently decided to ignore the sixty-day-notice provision of the Texas Insurance Code[15]—filed this lawsuit, which

---

[9] **Ex. A-4**; **Ex. A**, at ¶ 5.

[10] **Ex. A-5**; **Ex. A** at ¶ 5.

[11] **Ex. A-6**; **Ex. A**, at ¶ 6.

[12] **Ex. A-6**; **Ex. A**, at ¶6.

[13] **Ex. A-7**; **Ex. A**, at ¶6.

[14] **Ex. A**, at ¶ 6.

[15] Section 541.154 of the Texas Insurance Code provides as follows:

> (a)  A person seeking damages in an action against another person under this subchapter must provide written notice to the other person not later than the 61st day before the date the action is filed.
>
> (b)  The notice must advise the other person of:
>
> > (1)  the specific complaint; and
> >
> > (2)  the amount of actual damages and expenses, including attorney's fees reasonably incurred in asserting the claim against the other person.

TEX. INS. CODE § 541.154 (a, b).  The purpose of this statute is to "discourage litigation and encourage settlements of consumer complaints," and Plaintiff should have waited no earlier than March 11, 2017 before filing suit, in order to allow Safeco to exercise its "right and opportunity to make a settlement offer." *Dosekun v. State Farm Lloyds*, 833 F. Supp. 2d 662, 664 (S.D. Tex. 2011) (quoting *Hines v. Hash*, 843 S.W.2d 464, 468 (Tex. 1992) (quoting *Jim Walter Homes, Inc. v. Valencia*, 690 S.W.2d 239, 242 (Tex. 1985))).

---

Safeco timely removed to this Court.[16] Plaintiff alleges the following causes of action: (1) breach of contract[17]; (2) violations of Section 541.060 of the Texas Insurance Code[18]; (3) breach of the common-law duty of good faith and fair dealing[19]; and (4) violations of Chapter 542 of the Texas Insurance Code.[20]

### C.   SAFECO'S APPRAISAL DEMAND AND PLAINTIFF'S REFUSAL TO PARTICIPATE

7.      On April 7, 2017, Safeco invoked the Policy's appraisal provision and designated Richard Fate as its appraiser.[21]  The appraisal clause provides as follows:

> **8.     Appraisal.**  If you and we do not agree on the amount of the loss, including the amount of ***actual cash value*** or ***replacement cost***, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on request of you or the company, such umpire shall be selected by a judge of a court of record in the state in which the property is located. The appraisers shall then resolve the issues surrounding the loss, appraise the loss, stating separately the ***actual cash value*** or ***replacement cost*** of each item, and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two of these three, when filed with the company shall determine the amount of loss.
>
> Each party will:
>
> a.     pay its own appraiser; and
> b.     bear the other expenses of the appraisal and umpire equally.[22]

---

[16] *See* Safeco's "Notice of Removal" [**Dkt. 1**].

[17] Plaintiff's Third Amended Complaint [**Dkt. 32**] ("Complaint"), ¶¶ 14–20.  The causes of action pleaded in Plaintiff's Third Amended Complaint are the very same ones pleaded in Plaintiff's original, state-court petition.  Neither pleading provides much in the way of factual support.

[18] Complaint, ¶¶ 21–28.  These "allegations" are merely generic, boilerplate regurgitations of the applicable statute.

[19] Complaint, ¶¶ 29–33.

[20] Complaint, ¶¶ 34–36.  As with the other statutory violations, these paragraphs contain no dates, no timeline, nor any other specific reference to any facts.

[21] *See* **Ex. B-1**.

[22] **Ex. A-1** at Section I – Property Conditions, ¶ 8, pp.12-13.

---

Additionally, the Policy contains a provision that specifically conditions coverage actions on the insured's compliance with Policy conditions such as the appraisal clause.  More specifically, the Policy's "Suit Against Us" provision states as follows:

> **9.     Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions and the action is started within two years and one day after the cause of action accrues.[23]

### D.     THE APPRAISAL AWARD AND SAFECO'S TIMELY PAYMENT

8.       Plaintiff, through his counsel, did not cooperate with Safeco's appraisal demand, and instead offered protracted resistance to the appraisal process.  Eventually, after this Court's jurisdictional ruling [**Dkt. 30**], Safeco filed its Motion to Compel Appraisal [**Dkt. 33**], which the Court granted on August 4, 2018 [**Dkt. 46**].  That same day, Plaintiff's counsel emailed his designation of appraiser to Safeco's counsel, and the parties' designated appraisers both inspected the Property on August 9, 2017.[24]

9.       On August 23, 2017, the parties' appraisers issued an agreed appraisal award (the "Appraisal Award") in the amount of $29,786.17 replacement cost value ("RCV") and $28,501.54 actual cash value ("ACV").[25]  That same day, Safeco's counsel sent Plaintiff's counsel an email advising that payment would be issued for the Appraisal Award and requesting drafting instructions for issuance of the payment, including information regarding any mortgage holders before the payment could be issued.[26]

---

[23] *Id.* at ¶ 9, p. 13.

[24] See **Exhibit C**, at ¶ 2.

[25] *See* **Ex. B-5**.

[26] *See* **Ex. B-4**.

10.     On August 23, 2017, after the close of business and numerous emails, Plaintiff's counsel provided Safeco's counsel drafting instructions.[27]  On August 24, 2017, Safeco issued a check for $5,301.01—the RCV amount of the Appraisal Award, less the Policy's deductible ($2,949.00), pursuant to the Policy's terms and conditions, which Safeco's counsel forwarded to Plaintiff's counsel on August 25, 2017.[28]  Plaintiff's counsel received the funds in payment of the Appraisal Award on August 28, 2017.[29]

11.     Having fully and timely paid the Appraisal Award, Safeco now seeks summary judgment on all of Plaintiff's claims.

## IV.

## SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment.[30]  In a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists.[31]  To determine whether a genuine issue exists for trial, the Court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant.[32]

If the non-movant bears the burden of proof at trial (such as here), the summary judgment movant need not support its motion with evidence negating the non-movant's

---

[27] *See* **Ex. B** at ¶ 6; **Ex. B-4**.

[28] *See* **Ex. B-5**.

[29] *See* **Ex. B-6**.

[30] *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).

[31] *Provident Life & Accident Ins. C. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001).

[32] *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371–72 (5th Cir. 2002).

case.[33]   Rather, the movant may satisfy its burden by pointing to the absence of evidence to support the non-movant's case.[34]   Defendant now moves for summary judgment pursuant to Rule 166a(i) because there is no evidence to support one or more of the elements of Plaintiff's claims for (1) breach of contract; (2) violations of Chapters 541 and 542 of the Texas Insurance Code; (3) breach of the duty of good faith and fair dealing; and (4) fraud.   More specifically, Plaintiff can produce no evidence that Safeco breached the contract, *i.e.*, the Policy, or that Plaintiff suffered any independent injury that would give rise to any extra-contractual claims.

## V.

## ARGUMENTS & AUTHORITIES

### A.   APPRAISAL AWARDS ARE BINDING AND ENFORCEABLE

The Texas Supreme Court has long recognized the validity of appraisal provisions, which "provide a means to resolve disputes about the amount of loss for a covered claim."[35] Absent illegality or waiver, appraisal clauses are generally enforceable.[36]   Texas courts indulge every reasonable presumption to sustain an appraisal award.[37]

---

[33] *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990).

[34] *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994).

[35] In re Universal Underwriters of Tex. Ins. Co., 345 S.W.3d 404, 406–07 (Tex. 2011); see also Scottish Union & Nat'l Ins. Co. v. Clancy, 8 S.W. 630, 631 (Tex. 1888).

[36] *See State Farm Lloyd's v. Johnson*, 290 S.W.3d 886, 888 (Tex. 2009) ("In the absence of fraud, accident, or mistake, the parties having agreed that the amount of loss shall be determined in a particular way, we are constrained to hold that such stipulation is valid.") (quoting *Scottish Union*, 8 S.W. at 631)); *Amine v. Liberty Lloyds of Tex. Ins. Co.*, 2007 WL 2264477, at *3 (Tex. App.—Houston [1st Dist.] Aug. 9, 2007, no pet.) ("Appraisal awards made under the provisions of an insurance contract are binding and enforceable . . . .").

[37] *See Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 786 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

## B.   PAYMENT OF THE APPRAISAL AWARD REQUIRES DISMISSAL OF PLAINTIFF'S BREACH OF CONTRACT CLAIM AS A MATTER OF LAW

Plaintiff asserts a cause of action against Safeco for breach of contract.[38]  To prevail on a breach of contract claim, a plaintiff must prove (1) that there is a valid and enforceable contract, (2) standing to sue on the contract, (3) performance by the plaintiff, (4) breach by defendant, and (5) that defendant's breach caused the plaintiff injury.[39]  "Under Texas law, when an insurer makes timely payment of a binding and enforceable appraisal award, and the insured accepts the payment, the insured is 'estopped by the appraisal award from maintaining a breach of contract claim against [the insurer].'  By payment of the full amount of an appraisal award, the insurer 'complie[s] with every requirement of the contract, [and] *it cannot be found to be in breach*.'"[40]

*Breshears v. State Farm Lloyds* is the leading case on point.  In that case, the insurer initially paid based on its own damage assessment.[41]  When the parties remained at odds over the cost to repair, the insurer invoked an appraisal provision identical to the one at issue in this case[42] and promptly paid the difference between its own assessment and the umpire's award.[43]  The insured argued that the second payment was evidence of breach of contract.  Flatly rejecting this argument, the court held that the insured "may not use the

---

[38] *See* Complaint, at ¶ 15.

[39] *See, e.g., B&W Sup. v. Beckman*, 305 S.W.3d 10,16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

[40] *Anderson v. Am. Risk Ins. Co., Inc.*, 01-15-00257-CV, 2016 WL 3438243, at *4 (Tex. App.—Houston [1st Dist.] June 21, 2016, no pet.) (emphasis added) (citing *Breshears v. State Farm Lloyds*, 155 S.W.3d 340 (Tex. App.—Corpus Christi 2004, pet. denied); *Blum's Furniture Co. v. Certain Underwriters at Lloyds London*, No. 11–20221, 2012 WL 181413, at *2 (5th Cir. Jan. 24, 2012) (quoting *Franco*, 154 S.W.3d at 787)).

[41] *Id.* at 342.

[42] The provision is promulgated by the Texas Department of Insurance.

[43] *Breshears*, 155 S.W.3d at 342.

---

fact that the appraisal award was different than the amount originally paid as evidence of breach of contract, especially when the contract they claim is being breached provides for resolution of disputes [regarding the amount of loss] through appraisal." Instead, because the insurer complied with every requirement of the contract—participation in the appraisal process and prompt payment—"it cannot be found to be in breach."[44]  Without a breach, there was no basis for assessing penalty fees, attorney's fees, or prejudgment interest under the predecessor versions of the statues under which Plaintiff now brings similar claims, and the court granted summary judgment on these claims as well.[45]

Several other courts have addressed similar breach of contract claims and reached the same conclusion.[46]  In *Franco v. Slavonic Mutual Fire Association*,[47] the insured made a claim on a homeowner's policy.  The insurer inspected, prepared an estimate, and paid what it claimed was the actual cash value of the repairs, less a deductible.[48] The insured thereafter invoked the appraisal provision, and the parties' respective impartial appraisers together selected an umpire.  The appraisal panel issued an award determining that the amount of loss was several thousand dollars, and the insurer promptly paid the full amount of the award.[49]

---

[44] *Id.* at 343.

[45] *Id.* at 344-45. *See infra* for other authority discussing the statutory claims and the reasons why Plaintiff's statutory and common-law extra-contractual claims fail as a matter of law.

[46] *Cf. Brownlow v. United Services Auto Ass'n*, Cause No. 13-03-758-CV, 2005 WL 608252, *1-2 (Tex. App.—Corpus Christi 2005, pet. denied) (insurer participated in the appraisal process and tendered the amount awarded by the umpire, and therefore "it cannot be found to be in breach," even if its prior, partial payment was less than the amount of the appraisal award).

[47] *Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

[48] *Id.* at 780.

[49] *Id.* at 781.

---

The insured nevertheless sued for breach of contract and various extra-contractual claims. The insurer moved for and obtained summary judgment, and the court of appeals affirmed. In so doing, the court first noted that "the effect of an appraisal provision is to estop one party from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court."[50] After rejecting the insured's contention that the insurer's appraiser was biased, the court turned to the insured's argument that "payment of an appraisal award is not dispositive" of the "entire breach of contract cause of action. . . ."[51] The court disagreed. The record revealed that *the insurer did not deny the insured's claim, but rather "paid the full amount of the appraisal award," and therefore "under these circumstances, appellants are estopped by the appraisal award from maintaining a breach of contract claim against" the insurer.*[52]

More recently, in *Garcia v. State Farm Lloyds*, the Fourth Court of Appeals issued an opinion on this very issue on facts indistinguishable from this case.[53]  The *Garcia* court, relying on *Breshears*, reaffirmed clear Texas precedent that "the discrepancy between the initial estimate and the appraisal award cannot be used as evidence of breach of contract."[54] Accordingly, the *Garcia* court held that the insured failed to raise a fact issue on the breach of contract claim "because she cannot use the fact that the appraisal award was different from the original damage estimates as evidence of breach of contract."[55]  In affirming the

---

[50] *Id.* at 786 (*citing Wells v. American States Preferred Ins. Co.*, 919 S.W.2d 679, 683-85 (Tex. App.—Dallas 1996, writ denied)).

[51] *Franco*, 154 S.W.3d at 787.

[52] *Id.*  (emphasis added). The *Franco* court's disposition of the insured's extra-contractual claims is discussed in the next section.

[53] *Garcia v. State Farm Lloyds*, 514 S.W.3d 257 (Tex. App.—San Antonio 2016, pet. denied).

[54] *Id.* at 273 (internal quotations omitted).

[55] *Id.* at 273-74.

trial court's granting of summary judgment for State Farm Lloyds on the breach of contract claim, the appellate court further noted that the insured failed to show how State Farm Lloyds breached any provision of the insurance policy through its "purportedly unreasonable investigation" or otherwise produce any evidence beyond the appraisal award in support of plaintiff's breach of contract claim.[56]

Finally, the Houston Court of Appeals recently reached the same conclusion in *National Security Fire & Casualty. Co. v. Hurst*, which reiterated the rule that "tender of the full amount owed pursuant to the conditions of an appraisal clause is all this is required to estop the insured from raising a breach of contract claim."[57] Accordingly, under facts similar to the present case, the *Hurst* court held that the insured's breach of contract claim was precluded as a matter of law following the insurer's payment of the appraisal award.[58] That court further held that because "Hurst is estopped as matter of law from recovering for breach of contract, there is no basis for awarding prejudgment interest."[59]

In sum, in order to prevail on his breach of contract claim, Plaintiff must prove breach and injury caused by that breach.  He cannot do so.  Instead, the undisputed evidence establishes that Safeco has negated each of these elements as a matter of law.  Pursuant to the express terms of the Policy, Safeco and Plaintiff participated in the appraisal process and Safeco timely paid the full amount of the Appraisal Award.  Accounting for the undisputed deductible, Safeco has paid the full amount of loss and therefore has fulfilled

---

[56] *Id.* at 274.

[57] *Nat'l Security Fire & Cas. Co. v. Hurst*, No. 14-15-00714-CV, 2017 WL 2258243, *3 (Tex. App.—Houston [14th Dist.] May 23, 2017) (internal quotations and citations omitted).

[58] *Id.* at *4.

[59] *Id.* at *5.

all of its obligations under the Policy.  Both the facts and the controlling authority are undisputed, and Safeco is entitled to summary judgment on Plaintiff's breach of contract claim.

Additionally, and in the alternative, Plaintiff has no evidence of either a breach or any injury caused by any alleged "breach," each of which is an essential element of the cause of action.  Accordingly, Safeco is entitled to judgment as a matter of law on Plaintiff's breach of contract claim pursuant to Rule 166a(i) of the Texas Rules of Civil Procedure.

## C. TEXAS LAW IS CLEAR THAT ONCE AN APPRAISAL AWARD HAS BEEN TIMELY PAID, ANY EXTRA-CONTRACTUAL CLAIMS HAVE NO LEGAL BASIS

The Appraisal Award conclusively establishes the total amount of the loss caused by the storm that damaged Plaintiff's Property. Safeco accepted and timely paid the Appraisal Award.  Therefore, as a matter of law, Plaintiff can no longer maintain any of his extra-contractual causes of action because he cannot show an independent injury that would otherwise entitle him to benefits under the Policy.

The Texas Supreme Court has long held "that in most circumstances, an insured may not prevail on a bad faith claim without first showing that the insurer breached the contract."[60]  Of course, the corollary is that "where an insurer has fulfilled its obligations under the contract, here because it has paid all covered damages determined by the appraisal, it generally has no unfulfilled duty stemming from the parties' special relationship."[61] The only exceptions to this rule arise in two situations: (1) where the insurer

---

[60] *Liberty Nat. Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996) (citing *Republic Insurance v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995); *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994)); accord *Scalise v. Allstate Texas Lloyds*, 7:13-CV-178, 2013 WL 6835248, at *7 (S.D. Tex. Dec. 20, 2013).

[61] *Scalise*, 2013 WL 6835248 at *7.

commits an "extreme act" that results in an injury independent of the policy claim; or (2) where the insurer fails to timely investigate a claim.[62]

As the Supreme Court recently noted, "a successful independent-injury claim would be rare, and we in fact have yet to encounter one."[63]  The Fifth Circuit made a similar observation in 2013: "in seventeen years since the [*Stoker*] decision appeared, no Texas court has yet held that recovery is available for an insurer's extreme act, causing injury independent of the policy claim, in the first-party claim context . . . ."[64]  Indeed, neither of the exceptions to the general rule are present here.  Not only does Plaintiff ***fail to even plead*** an independent injury, Plaintiff simply has no evidence of an independent injury.

### 1.    Mere denial of a claim is not enough to show "bad faith" (and Safeco did not even deny Plaintiff's claim)

As a general rule, to establish bad faith in Texas, a plaintiff must prove that an insurer denied payment of a claim when it knew or should have known its liability on the claim was reasonably clear.[65]  An insurer does not breach its duty of good faith merely by erroneously denying a claim; rather, if a *bona fide* dispute exists as to coverage, there is no bad faith.[66]  Thus, as long as the insurer has a reasonable basis to deny payment of a claim, even if that basis is eventually determined by the fact-finder to be erroneous, the insurer is not liable for the common-law tort of bad faith.[67]  Evidence establishing only a *bona fide* coverage dispute does not demonstrate a breach of the duty of good faith and fair dealing

---

[62] *Id.* (citing *Stoker*, 903 S.W.2d at 341).

[63] *USAA Tex. Lloyds Co. v. Menchaca*, No. 14-0721, 2017 WL 1311752, *12 (Tex. April 7, 2017).

[64] *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 709 F.3d 515, 521–22 (5th Cir. 2013).

[65] *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997).

[66] *United States Fire Ins. Co. v. Williams*, 955 S.W.2d 267, 268 (Tex. 1997); *Transportation Ins. Co. v. Moriel*, 897 S.W.2d 10, 17-18 (Tex. 1994).

[67] *Lyons v. Millers Casualty Insurance Co.*, 866 S.W.2d 597, 600 (Tex. 1993).

as a matter of law.[68]  In other words, the "threshold of bad faith is reached when a breach

of contract is accompanied by an independent tort."[69]  As explained in *Garcia*:

> A simple disagreement among experts about whether the cause of the loss
> is one covered by the policy will not support a judgment for bad faith.  An
> insured claiming bad faith must prove that the insurer had no reasonable
> basis for denying or delaying payment of the claim, and that it knew or
> should have known that fact.[70]

The *Garcia* court further distinguishes the principal case upon which Plaintiff likely will

rely for the proposition that an independent injury is not required to show bad faith:

*Menchaca*.  However, "*Menchaca* can be distinguished in that it is not an appraisal case.

Therefore, we do not find the holdings in [that case] helpful."[71]

Further, in *Menchaca*, the Supreme Court held that even "if the policy does entitle

the insured to benefits, the insurer's statutory violation does not permit the insured to

recover any actual damages beyond those policy benefits ***unless the violation causes an***

***injury that is independent from the loss of the benefits***."[72]  Because Safeco timely paid

the Appraisal Award and thus paid Plaintiff the Policy benefits to which he is now entitled,

Plaintiff may recover on his alleged statutory violations only if he can show an independent

injury.  As discussed in detail below, he cannot.

Claims under the Texas Insurance Code require the same predicate for recovery as

a claim for the common-law duty of good faith.[73]  "An insurer will not be faced with a tort

---

[68] *Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 193 (Tex. 1988).

[69] *Garcia*, 514 S.W.3d at 276.

[70] *Id*. at 277.

[71] *Id*. at 278.

[72] *Menchaca*, 2017 WL 1311752 at *12 (emphasis added).

[73] *Giles,* 950 S.W.2d at 48, 55 (Tex. 1997) (stating that the court was "unif[ying] the common law and statutory standards for bad faith"); *Progressive County Mutual Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex.

suit for challenging a claim of coverage if there was any reasonable basis for denial of that coverage."[74] Thus, "[w]hen an insured joins claims under the Texas Insurance Code . . . with a bad faith claim, all asserting a wrongful denial of policy benefits, if there is no merit to the bad faith claim, there can be no liability on either of the statutory claims."[75]

Of course, as Safeco has paid the Appraisal Award, there was never any "denial" of Plaintiff's claim.  And given that there was simply never any denial of Plaintiff's claim, it is an impossibility for Plaintiff to recover on his extra-contractual claims.  Thus, Plaintiff's extra-contractual claims—whether pleaded as alleged violations of the Insurance Code or as a breach of the duty of good faith and fair dealing—all fail as a matter of law, and Safeco is entitled to summary judgment.

**2.      Safeco's participation in the appraisal process and payment of the Appraisal Award preclude all of Plaintiff's claims under the Texas Insurance Code**

As the Fifth Circuit reaffirmed only during last week of September, "a plaintiff may not seek Chapter 542 damages for any delay in payment between an initial payment and the insurer's timely payment of an appraisal award."[76]  And, as numerous federal and state opinions have recently held, Plaintiff's other extra-contractual claims fail as a matter of law due to Safeco's fully payment of the Appraisal Award.[77]

---

2005); *Nat'l Sec. Fire & Cas. Co. v. Hurst*, 14-15-00714-CV, 2017 WL 2258243, at *6 (Tex. App.—Houston [14th Dist.] May 23, 2017, reh'g denied July 25, 2017) (citing

[74] *Higginbotham*, 103 F.3d at 460.

[75] *Douglas v. State Farm Lloyds*, 37 F. Supp. 2d 532, 544 (S.D. Tex. 1999) (applying Texas law); *Garcia*, 2016 WL 7234064 at *13.

[76] *Mainali Corp. v. Covington Specialty Ins. Co.*, 17-10350, 2017 WL 4172518, at *2 (5th Cir. Sept. 21, 2017), as revised (Sept. 27, 2017)

[77] A total of three district court opinions have considered *Menchaca* in the very same post-appraisal, summary judgment context at issue here, and all three have granted summary judgment in favor of the insurer on the insured's extra-contractual claims.  *See Cano v. State Farm Lloyds*, 3:14-CV-2720-L, 2017 WL 3279139, at *1 (N.D. Tex. Aug. 2, 2017) (relying on *Nat'l Security Fire & Cas. Co. v. Hurst*, 2017 WL 2258243 (Tex. App.—Houston [14th Dist.] May 23, 2017).; *Certain Underwriters at Lloyd's of London v. Lowen Valley*

The leading case after *Menchaca* on the failure of extra-contracual claims post-appraisal is *National Sec. Fire & Cas. Co. v. Hurst*, decided on May 23, 2017.[78]  *Hurst* discussed and applied the framework set forth in *Menchaca* in the appraisal context, and affirmed summary judgment on both contractual and extra-contractual claims against National Security Fire & Casualty ("National") arising from wind damage to Hurst's home as a result of Hurricane Ike.   The facts of *Hurst* virtually trace the facts at issue in this lawsuit: Hurst disagreed with National's initial assessment of the loss; Hurst filed a lawsuit on September 7, 2010; Hurst's counsel invoked the policy's appraisal clause on February 19, 2014; an appraisal award issued on September 25, 2014; and National immediately tendered payment of the award.   Hurst never moved to set aside the award, never returned or cashed the check, and continued to pursue litigation. Ultimately, trial was held and the jury found in favor of Hurst, awarding contractual damages equal to the appraisal award. Additionally, the jury awarded nearly $100,000 in extra-contractual damages for common law bad faith, unfair settlement practices in violation of Section 541.151 of the Texas Insurance Code, and violations of the prompt payment provisions of Chapter 542 of the Texas Insurance Code.   National appealed, arguing that "full and timely payment of the appraisal award precludes as a matter of law any award for breach of contract, penalty interest, or any statutory or common-law bad faith violations."[79]

In its opinion, the *Hurst* court ruled precisely as Safeco now urges this Court to rule: that the payment of an appraisal award precludes a plaintiff from recovering any

---

*View, LLC*, 3:16-CV-0465-B, 2017 WL 3115142, at *17 (N.D. Tex. July 21, 2017); *Losciale v. State Farm Lloyds*, CV 4-17-0016, 2017 WL 3008642, at *3 (S.D. Tex. July 14, 2017) (again relying heavily on *Hurst*, 2017 WL 2258243).

[78] *See Hurst*, 2017 WL 2258243.

[79] *Id.* at *2.

damages beyond policy benefits unless he can show an independent injury. In *Hurst*, like the present case, the insured based his extra-contractual claims on the carrier's initial investigation, resulting estimate and payment of the claim. Likewise in *Hurst*, the carrier never denied coverage under the policy but rather timely investigated and issued payment after an appraisal award. Accordingly, the Court of Appeals held that "Hurst has received the benefits to which he was entitled under the policy and has not alleged any act so extreme as to cause independent injury."[80]   Ultimately, the Court of Appeals found that the trial court erred in denying the carrier's motion for a directed verdict, reversed the trial court's judgment and rendered its own judgment that Hurst take nothing on his claims.[81]   In so doing, the Court noted as follows:

> [T]he binding appraisal process is an extra-judicial means designed to avoid litigation on the issue of damages. We conclude that an insured cannot defeat an otherwise valid and binding appraisal award simply by refusing to accept the insurer's payment of the award or by asserting extra-contractual claims that are derivative of the policy claim. To hold otherwise would obviate the very purpose of the binding appraisal process.[82]

The *Hurst* court further disposed of Hurst's prompt payment claim under Chapter 542 of the Texas Insurance Code, noting that "[a]s this court has recognized, full and timely payment of an appraisal award under the policy precludes an award of penalties under the Insurance Code's prompt payment provisions as a matter of law."[83]

Thus, absent the showing of an independent injury—which the Texas Supreme Court in *Menchaca* noted is "rare" and it "has yet to encounter one"—*Menchaca* does

---

[80] *Id*. at *6.

[81] *Id*. at *7.

[82] *Id*.

[83] *Id*. at *5.

nothing to change the long line of Texas cases holding that the timely payment of an appraisal award estops a breach of contract claim, as well as the "tag-along" extra-contractual claims for statutory and/or common law bad faith and prompt payment penalties.

In the present case, Plaintiff ***does not even plead*** any injury independent of any alleged wrongful denial of Policy benefits, thus precluding any extra-contractual damages as a matter of long-established Texas law.  Plaintiff's Disclosures make the absence of any "independent injury" all too clear: the sole damages mentioned are "$39,262.39, which represents the full amount actually and necessarily spent to repair or replace the damaged property . . . ."[84]  Moreover, Plaintiff has not even attempted to plead an injury independent from the alleged wrongful denial of Policy benefits.  The evidence (or lack thereof) establishes that there was never any extreme act, much less any independent injury, or of any failure to timely investigate, as Plaintiff's Complaint and his own Disclosures make plain.  The inescapable fact is that the sole damages at issue in this dispute are the amount of Plaintiff's loss—damages that have been conclusively set, and promptly paid, through the appraisal process.[85]  Accordingly, in the absence of any alleged injury independent of the (alleged) denial of Policy benefits, Plaintiff's extra-contractual claims fail as a matter of law, and Safeco is entitled to summary judgment on Plaintiff's extra-contractual bad faith, fraud, and prompt payment claims.

---

[84] Exhibit B-7, at page 4.

[85] *See* Complaint at ¶¶ 17–23.

# VI.

## CONCLUSION

Safeco timely paid the Appraisal Award after properly invoking appraisal. The Policy's appraisal provision is a bargained-for contractual term, which exists for the sole purpose of resolving disagreements between carriers and insureds as to the amount of loss in a particular claim. Plaintiff has never alleged any facts or causes of action apart from a dispute over entitlement to insurance benefits stemming from this claim. Texas law is clear that Plaintiff's claims cannot survive once appraisal has resolved the contractual dispute.

In fact, the frequency and consistency with which Texas courts are disposing of contractual and extra-contractual claims following the timely payment of an appraisal award is not a trend.  It demonstrates that the law is well-settled in this state.  In addition to *Menchaca*, Plaintiff likely will cite an unpublished federal district court opinion from 2015[86] wherein the judge did not grant total summary judgment because the insured was allowed to present evidence of some independent injury *other than* the contractual dispute for benefits.  That has not, however, changed Texas substantive law on this issue as evidenced by the *Hurst* opinion. To hold otherwise would break with Texas precedent and

---

[86] While Plaintiff is likely to cite *Graber v. State Farm Lloyds*, No. 3:13–CV–2671–B, 2015 WL 3755030, at *4 (N.D. Tex. June 15, 2015), in his response to this Motion in an effort to bolster his extra-contractual claims, the Fifth Circuit disparaged *Graber*'s failure to "recognize an Erie court's duty to follow state courts' interpretation of state law rather than the interpretation the federal court thinks makes the most sense," and further noted that, at any rate, **the Fifth Circuit reached precisely the opposite conclusion in *Quibodeaux v. Nautilus Ins. Co.*,** 655 Fed. Appx. 984, 986–87 (5th Cir. 2016).  *See Mainali*, 17-10350, 2017 WL 4172518, at *3.  And in *Mainali*, the Northern District <u>itself</u> has declined to follow the opinion, and agreed that "*Graber* is an outlier." *Mainali Corp. v. Covington Specialty Ins. Co.*, 3:15-CV-1087-D, 2017 WL 840977, at *5 (N.D. Tex. Mar. 3, 2017), aff'd, 17-10350, 2017 WL 4172518 (5th Cir. Sept. 21, 2017), as revised (Sept. 27, 2017).  Further, it is important to note that the Houston court in *Anderson* cited *Graber* in support of its granting of summary judgment to the insurer on the breach of contract and bad faith claims. Thus, the *Anderson* court had the *Graber* opinion before it, considered it, and ultimately concluded that established Texas law mandated summary judgment on *all* claims. 2016 WL 3438243, at *5–7.  Likewise, the *Garcia* court considered and distinguished *Graber* and reached the same conclusion as did the court in *Anderson.  Garcia*, 2016 WL 7234064 at *11, *12 and *15.

---

amount to new law.  Furthermore, Plaintiff simply has not alleged any dispute apart from the disagreement over entitlement to insurance benefits, so none can survive.

## VII.

## PRAYER

For each of the foregoing reasons, Defendant Safeco Insurance Company of Indiana respectfully requests that the Court grant the Motion; enter an order dismissing each of Plaintiff's claims and causes of action pleaded herein with prejudice to the re-filing of the same; award Safeco its costs of court; and grant Safeco all other and further relief, general or special, at law or in equity, to which it is justly entitled.

Respectfully submitted,

*/s/ Colin R. Batchelor*
MARK D. TILLMAN
State Bar No. 00794742
COLIN R. BATCHELOR
State Bar No. 24043545
JACKSON P. MABRY
State Bar No. 24078894
**TILLMAN BATCHELOR LLP**
1320 Greenway Drive, Suite 830
Irving, Texas 75038
Telephone: (214) 492-5720
Facsimile: (214) 492-5721
E-mail:  mark.tillman@tb-llp.com
E-mail:  colin.batchelor@tb-llp.com
E-mail:  jackson.mabry@tb-llp.com
**ATTORNEYS FOR DEFENDANT
SAFECO INSURANCE COMPANY OF
INDIANA**

## <u>CERTIFICATE OF SERVICE</u>

In accordance with Rules 21 and 21a of the Texas Rules of Civil Procedure, on October 11, 2017, a true and correct copy of the above and foregoing instrument was served *via facsimile or electronic service* upon:

Clifford K. Nkeyasen
SBN  24044876
P.O. Box 132111
Dallas, Texas 75313
(214) 265-3635 (Telephone)
(214) 292-9494 (Facsimile)
clifford@coveragedenied.com

_/s/ Colin R. Batchelor_
COLIN R. BATCHELOR